**United States District Court**
For the Northern District of California

1
2
3
4
5                      UNITED STATES DISTRICT COURT
6                      NORTHERN DISTRICT OF CALIFORNIA
7

8   RICK DELAGARZA, *et al.*,                    No. C-09-5803 EMC

9            Plaintiffs,

10       v.                                      **ORDER GRANTING PLAINTIFFS'**
                                                 **MOTION FOR CLASS**
11  TESORO REFINING AND MARKETING                **CERTIFICATION**
    COMPANY,
12                                               **(Docket No. 109)**
             Defendant.
13  _____/

14
15
16                            **I.    INTRODUCTION**

17       Plaintiffs' motion to certify a class came on for hearing before the Court on August 12, 2011.

18  Docket No. 109.  In addition, both parties have submitted requests for judicial notice, Docket Nos.

19  113, 138, 170, and Defendant has submitted evidentiary objections to Plaintiffs' evidence related to

20  class certification, Docket No. 180.

21       Plaintiffs Rick Delagrza, Paul Gutierrez, Sal Lucido, April Moore, Charles Grimmett,

22  Antonio Garcia, and Brian Cashwell ("Plaintiffs") filed suit against Tesoro Refining and Marketing

23  Company ("Tesoro") on behalf of themselves and a purported class of current and former Tesoro

24  employees who worked at least one 12-hour shift at the Golden Eagle refinery and chemical plant

25  since April 25, 2004.  Docket No. 109, Mot. for Class Cert. ("Mot."), at 1.  They allege that Tesoro

26  has (1) failed to provide meal periods in violation of California Labor Code sections 512 and 226.7,

27  and Industrial Wage Commission ("IWC") Wage Order 1-2001 section 11, 8 Cal. Code Regs. §

28  11010; and (2) with respect to a purported subclass of workers whose employment has been

**United States District Court**
For the Northern District of California

1 terminated by discharge or resignation, failed to pay wages due at the time of discharge or

2 resignation in violation of California Labor Code sections 201, 202, and 203. They also allege

3 violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*.

4       After considering the parties' submissions and oral argument, the Court hereby GRANTS

5 Plaintiffs' motion to certify the class and enters the following order.

6 ## II.   FACTUAL & PROCEDURAL BACKGROUND

7       On November 17, 2009, Plaintiffs, a purported class of 12-hour shift employees at the

8 Golden Eagle refinery in Martinez, filed suit against Tesoro, alleging that they were required to be

9 on duty at the refinery for the entirety of their shifts due to the dangerous work environment under

10 which they operate, the potential need for emergency response, and Tesoro's efforts to keep the

11 refinery running 24 hours a day, 365 days a year.  Mot. at 1-2; *see* 4th Am. Compl. ¶ 21 ("Compl.").[1]

12 Plaintiffs alleged that Tesoro failed to provide them with the required meal periods or extra pay to

13 which they were entitled.  Compl. ¶¶ 22-24.  In particular, Plaintiffs allege they were not relieved of

14 duties while on meal breaks and that they were not afforded additional pay required for on-duty

15 meal breaks.

16       In an earlier related case, the United Steel Workers ("USW") and two Tesoro employees had

17 filed a class action suit against Shell and Tesoro in state court on April 25, 2008, alleging the same

18 violations.  *United Steel Workers v. Shell Oil Co.* ("*USW*"), No. 08-3693 RGK; *see* Mot. at 2;

19 Compl. ¶ 19.  That case was removed to the Central District of California.  The *USW* case alleged

20 meal period violations on behalf of employees who worked at three Shell and Tesoro-operated

21 refineries, including but not limited to the Golden Eagle refinery.  Mot. at 2.  Judge Klausner denied

22 the motion for class certification in that case on August 21, 2009, on the grounds that the proposed

23 class would be unmanageable.  *Id.*  Specifically, the court found that plaintiffs could not satisfy the

24 superiority requirement of Rule 23(b)(3).  Because the matter spanned three refineries and two

25 employers, along with numerous job titles and rates of pay, the court determined that "managing

26 such a class would be rife with difficulties because each member's damages would likely vary

27 ─────────────────

28     [1]  The action began in Contra Costa County Superior Court, but was subsequently removed to federal court.

**United States District Court**
For the Northern District of California

1   substantially." CMC Statement, Docket No. 30, at 10 (quoting Order Denying Class Certification,

2   *USW*, Docket No. 104). Judge Klausner has since granted the individual plaintiffs partial summary

3   judgment, *USW*, Docket No. 198, and "entered judgment against Shell and Tesoro on their meal

4   period, wage statement, and UCL restitution claims" on March 23, 2011.  CMC Statement, Docket

5   No. 165, at 4; *see USW*, Docket No. 244.

6        Following Judge Klausner's denial of class certification in *USW*, Plaintiffs subsequently filed

7   this action on behalf of just one refinery's employees (the Golden Eagle Refinery) on November 17,

8   2009.  They also filed separate actions covering the other two refineries that had been at issue in the

9   *USW* case (the Martinez refinery and Los Angeles refinery).  Fang Decl. ¶ 13, Docket No. 110.  The

10  Martinez case is before Judge Wilken, *Gardner v. Shell Oil Co.*, No. C-09-05876 CW ("*Gardner*"),[2]

11  and the Los Angeles case against Tesoro is before Judge Fairbank in the Central District, *Burgess v.*

12  *Tesoro*, No. C-10-05870 VBF ("*Burgess*").  On March 28, 2011, Judge Fairbank granted plaintiffs'

13  motion for class certification.  *Burgess*, Docket No. 83 ("slip op.").  On April 21, 2011, Judge

14  Wilken also granted plaintiffs' motion for class certification.  *Gardner*, Docket No. 86, 2011 WL

15  1522377 (N.D. Cal. April 21, 2011) ("slip op.").[3]  The parties have subsequently filed cross-motions

16  for summary judgment, which remain under submission to the Court since June 30, 2011.  *Gardner*,

17  Docket No. 110.

18       In the instant case, after motions to amend and add plaintiffs, the current operative complaint

19  in this case is the Fourth Amended Complaint, filed on March 20, 2011.  Docket No. 97.  Plaintiffs

20  filed their motion for class certification on April 18, 2011, which is now pending before this Court.

21  Docket No. 109.

22  ///

23  ///

24  ///

25

26       [2] The *Gardner* case has been deemed not related to this case.  Docket No. 71.

27       [3] The class and subclass certified in the *Gardner* action are of a similar scope to the classes
    Plaintiffs seek to certify here.  *Compare Gardner* Docket No. 86 at 4 (certifying a class of "[a]ll

28  current and former shift employees . . . who worked at least one 12-hour shift . . . since April 25,
    2004," and a subclass of former employees at the Martinez refinery) *with* Reply at 3 (quoted above).

United States District Court

For the Northern District of California

1

### III.  **DISCUSSION**

2 A.     Class Certification

3        Plaintiffs seek to certify the following class[4]:

4              All current and former shift employees of Defendant Tesoro Refining
               and Marketing Company who worked at least one 12-hour shift,
5              excluding shifts worked as Temporary Shift Supervisors, Shift Safety
               Inspectors and Shift Safety Inspector Trainees, Operator Helper
6              Trainees, and Zone Operator Relief personnel, since April 25, 2004, at
               the Golden Eagle refinery and chemical plant operated by Defendant.

7

8        In addition, Plaintiffs seek to certify the following subclass:

9              All former shift employees of Defendant Tesoro Refining and
               Marketing Company who worked at least one 12-hour shift, excluding
10             shifts worked as Temporary Shift Supervisors, Shift Safety Inspectors
               and Shift Safety Inspector Trainees, Operator Helper Trainees, and
11             Zone Operator Relief personnel, since April 25, 2004, at the Golden
               Eagle refinery and chemical plant operated by Defendant, and whose
12             employment has been terminated by discharge or resignation.

13       Rule 23 of the Federal Rules of Civil Procedure permits Plaintiffs to sue as representatives of

14 a class only if

15             (1) the class is so numerous that joinder of all members is
               impracticable;
16             (2) there are questions of law or fact common to the class;
               (3) the claims or defenses of the representative parties are typical of
17             the claims or defenses of the class; and
               (4) the representative parties will fairly and adequately protect the
18             interests of the class.

19 Fed. R. Civ. P. 23(a).  In addition, a purported class must be certified under Rule 23(b) by satisfying

20 any one of its prongs.  The two alternative prongs under which this class seeks certification permit a

21 class if

22             (2) the party opposing the class has acted or refused to act on grounds
               that apply generally to the class, so that final injunctive relief or
23             corresponding declaratory relief is appropriate respecting the class as a
               whole; or
24             (3) the court finds that the questions of law or fact common to class
               members predominate over any questions affecting only individual

25

26 _____

27       [4]  These classes are defined as revised in Plaintiffs' Reply in Support of Class Certification at
   3.  Plaintiffs clarified at oral argument that they intended Shift Safety Inspector Trainees to be
28 included in the category of "and Shift Safety Inspectors" to be excluded from the class.  Therefore,
   the Court has included that job title as an explicit exception to the class definition for clarity's sake.

members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b).

### 1.    Statute of Limitations and Tolling

As a preliminary matter, Defendant argues that the class period is too broad because it extends beyond the statute of limitations.  Opp. at 17.  Defendant contends that since Plaintiffs filed their complaint on November 17, 2009, the class period begins on November 17, 2005.  Plaintiffs counter that the *USW* action in the Central District, filed on April 25, 2008, tolled the statutory period for their claims so that the class period begins April 25, 2004.  Plaintiffs contend that both *American Pipe* and California equitable tolling apply to this action.  *See American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553 (1974).

Defendant argues further that even if tolling applies, the class period is still smaller than plaintiffs allege.  Opp. at 21.  According to Defendant, because the statute would begin to run as soon as class certification was denied in *USW*, the gap between that decision and the filing of the complaint in the instant case would start the class period at August 25, 2004, at the earliest.  *Id.*  Plaintiffs concede this point with respect to *American Pipe* tolling, but they argue that equitable tolling should apply to that period as well, keeping the class period at April 25, 2004.  Reply at 2-3.

### a.    *American Pipe* Tolling

Plaintiffs argue that the *USW* case tolled the statutory period for their claims.  *American Pipe*, 414 U.S. at 538.  In *American Pipe*, the Supreme Court held that "the commencement of the original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status."  *Id.*  The Court found that such a rule was consistent with the purpose of statutes of limitation to put the defendant on notice of the grounds for possible liability and protect him or her from having to litigate stale claims.  *Id.* at 554-55.  The Supreme Court has subsequently clarified that the *American Pipe* rule is not limited to class members who become intervenors, but rather it applies to "all asserted members of the class."  *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350 (1983).

**United States District Court**
For the Northern District of California

1    However, courts have been hesitant to apply *American Pipe* to a subsequently filed class

2    action.  *See Robbin v. Fluor Corp.*, 835 F.2d 213, 214 (9th Cir. 1987) (rejecting a plaintiff's attempt

3    to use *American Pipe* to file a subsequent class action); *Hatfield v. Halifax*, 564 F.3d 1177, 1189 n.8

4    (9th Cir. 2009) (questioning when *American Pipe* tolling can apply to subsequent class actions).  In

5    *Catholic Social Services, Inc. v. Reno*, 232 F.3d 1139 (9th Cir. 2000), for example, the Court

6    examined the "question of whether plaintiffs whose individual actions are not barred may be

7    permitted to use a class action to litigate those actions."  *Id.* at 1147.  The Court held that plaintiffs

8    whose earlier class action was denied only on the basis of ripeness could toll the statute of

9    limitations because they "are not attempting to relitigate an earlier denial of class certification, or to

10   correct a procedural deficiency in an earlier would-be class."  *Id.* at 1149.  The Court distinguished

11   its case with those in other circuits, wherein courts had denied tolling because class members had

12   filed subsequent actions attempting to cure the Rule 23 deficiencies that had caused the court to

13   deny certification in the first action.  *Id.* at  1147-48 (citing *Griffin v. Singletary*, 17 F.3d 356, 359

14   (11th Cir.1994) (finding that plaintiffs "may not piggyback one class action onto another and thus

15   toll the statute of limitations indefinitely") (internal quotation marks omitted); *Salazar-Calderon v.*

16   *Presidio Valley Farmers Ass'n*, 765 F.2d 1334, 1351 (5th Cir. 1985);  *Andrews v. Orr*, 851 F.2d 146

17   (6th Cir. 1988); *Fleck v. Cablevision VII, Inc.*, 807 F. Supp. 824 (D.D.C. 1992); *Smith v. Flagship*

18   *Int'l*, 609 F. Supp. 58 (N.D. Tex.1985); *Burns v. Ersek*, 591 F. Supp. 837 (D. Minn.1984).

19   While Plaintiffs in this case are not relitigating the earlier denial of class certification, they

20   are attempting to correct procedural deficiencies in the previous class.  *See Sheppard v. Capital One*

21   *Bank*, 2007 WL 6894541, at *3 (C.D. Cal. Jul. 11, 2007) (finding no tolling where second action

22   attempted to cure commonality, typicality, and superiority deficiencies from the first action by

23   narrowing the proposed class).  Accordingly, *American Pipe* tolling does not apply here.

b.    <u>California Equitable Tolling</u>

25   Alternatively, plaintiffs argue that California's equitable tolling principles apply.  "Equitable

26   tolling is a judicially created, nonstatutory doctrine designed to prevent unjust and technical

27   forfeitures of the right to a trial on the merits when the purpose of the statute of limitations-timely

28   notice to the defendant of the plaintiff's claims-has been satisfied."  *California Restaurant Mgmt.*

1   *Sys. v. City of San Diego* ("*CRMS*"), 195 Cal. App. 4th 1581, 1593 (Cal. App. 2011) (internal

2   quotation marks omitted).  "Three factors are taken into consideration when deciding whether to

3   apply equitable tolling under California law: (1) timely notice to the defendant in the filing of the

4   first claim; (2) lack of prejudice to the defendant in gathering evidence to defend against the second

5   claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim."

6   *Hatfield v. Halifax*, 564 F.3d 1177, 1185 (9th Cir. 2009).

7       In *Hatfield*, the Ninth Circuit tolled the statute of limitations for a subsequently filed class

8   action.  *Id.* at 1189 (9th Cir. 2009) ("In light of California's endorsement of class actions generally,

9   we see no reason why, in an equitable tolling situation, California would require each individual

10  California resident who is a member of the Hatfield class to file individually and burden the courts

11  with numerous suits.") (internal citation omitted).  Judge Wilken applied *Hatfield* to toll the statute

12  of limitations in the *Gardner* action, finding that the *USW* action gave Defendants "timely notice of

13  Plaintiffs' claims in the present case," "Defendants suffer no prejudice in gathering evidence to

14  defend against the present case because [it] is narrower than the USW case," and "Plaintiffs . . .

15  exhibited good faith and reasonable conduct by filing the complaint here less than three months after

16  the district court denied class certification in [the USW case]."  Request for Judicial Notice, Docket

17  No. 113, Exh. E, at 11-12.

18      The same is true of this action, which was filed the same day as the *Gardner* action and, like

19  *Gardner*, involves claims and a class that are narrower than in the original *USW* action.  The Court

20  agrees that earlier action overlaps with and encompasses the case at bar, thus precluding any

21  prejudice to Defendant.

22      Defendant argues that Judge Wilken mis-applied *Hatfield* and that *Hatfield's* equitable

23  tolling analysis is no longer good law after *CRMS*.  However, this argument is unpersuasive.  *CRMS*,

24  as Plaintiffs point out, involved a successive class action in which the classes were different from

25  each other, unlike this case in which the second purported class was included in the earlier class.

26  The Court in *CRMS* held that "a prior class action does not equitably toll or satisfy the governmental

27  claims requirements for claimants not within the class description contained in a timely-filed

28  governmental claim on which the prior class action was predicated."  *CRMS*, 195 Cal. App. 4th at

1597.  *CRMS* does not vitiate *Hatfield's* applicability to cases like the one at bar, in which the second putative class is encompassed by the class in the earlier one.

Defendant also argues that California equitable tolling cannot be used to escape the constraints of *American Pipe*.  Opp. at 19-20.  However, this position has already been rejected by *Hatfield*, which held that cases denying *American Pipe* tolling "do[] not dictate a similar rejection of California's equitable tolling doctrine" because equitable tolling "covers situations beyond those covered by *American Pipe*."  *Hatfield*, 564 F.3d at 1187-88.

On the merits of the equitable tolling test, Defendant makes only a cursory claim of prejudice.  *See* Opp. at 20 ("Here, Tesoro would be prejudiced as tolling would permit the piggy-backing of one failed class action upon another in an endless stream of lawsuits with class periods extending back dozens of years.").  However, the mere fact that Tesoro may suffer prejudice in the future if Plaintiffs managed to engage it in an "endless stream of lawsuits" does not allege, let alone demonstrate, that Defendant has suffered actual prejudice in this case.  Because the *USW* action gave Tesoro adequate notice and the claims in both cases overlap, Tesoro has suffered no prejudice in its defense of this action; moreover, Plaintiffs have acted diligently in pursuing their claims in the aftermath of *USW*.  Accordingly, the Court applies equitable tolling to their claims and finds that the class period begins on April 25, 2004.

     2.   <u>Rule 23(a)</u>

As noted above, Rule 23(a) requires a purported class to satisfy four criteria for certification: numerosity, commonality, typicality, and adequacy of the representatives.  Fed. R. Civ. Pro. 23(a).  Failure to meet any of the criteria defeats the motion.  *Rutledge v. Elect. Hose & Rubber Co.*, 511 F.2d 668, 673 (9th Cir. 1975).  However, defendants do not contest numerosity or typicality in their opposition. Therefore, the Court addresses each criterion in turn, focusing largely on the contested prongs of commonality and adequacy.

     a.   <u>Numerosity</u>

Plaintiffs satisfy the numerosity requirement if "the class is so large that joinder of all members is impracticable."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1101, 1019 (9th Cir. 1998).   In this case, the purported class is made up of 250-360 12-hour shift employees.  *See* Mot. at 20 (noting

250-300 current employees and 60 former employees).  Plaintiffs thus easily meet the numerosity

requirement.  *See Wang v. Chinese Daily News*, 231 F.R.D. 602, 607 (C.D. Cal. 2005) (100 or more

plaintiffs leads to a presumption of numerosity); *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258,

262 (S.D. Cal. 1998) (finding a purported class of forty members sufficient to satisfy numerosity);

*Gardner*, slip op. at 9-10 (finding class of 300-500 refinery employees satisfies numerosity).

> b.   Commonality

Plaintiffs must demonstrate that there are "questions of law or fact common to the class" in

order to satisfy Rule 23(a)(2).  This prong is subject to a "permissive[]" construction in the Ninth

Circuit.  *Hanlon*, 150 F.3d at 1019-20.  Plaintiffs need not demonstrate that all questions are

common to the class; rather, it is sufficient if either "shared legal issues with divergent factual

predicates" *or* "a common core of salient facts coupled with disparate legal remedies within the

class" are present.  *Id.*  However, plaintiffs must "demonstrate that the class members have suffered

the same injury," not "merely that they have all suffered a violation of the same provision of law."

*Wal-Mart v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  "Even a single [common] question" will suffice

to satisfy Rule 23(a).  *Id.* at 2556.

In order to assess commonality, "it may be necessary for the court to probe behind the

pleadings before coming to rest on the certification question."  *General Tele. Co. of S.W. v. Falcon*,

457 U.S. 147, 160 (1982) ("[T]he class determination generally involves considerations that are

enmeshed in the factual and legal issues comprising the plaintiff's cause of action.") (quotation

omitted).  However, in peeking at the merits to determine whether commonality is present, "[t]he

court may not go so far . . . as to judge the validity of these claims."  *USW v. ConocoPhillips Co.*,

593 F.3d 802, 808-09 (9th Cir. 2010) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir.

2003)).

Here, Plaintiffs contend there are many legal and factual issues common to the class.  Mot. at

20.  Namely, they assert the following common questions:

(1)     Whether Tesoro has violated its requirement to provide a 30-minute off-duty meal period for

every five hours of on-duty work;

(2)      Whether Tesoro's policy of requiring workers to remain on the premises and near their work areas at all times violates its duty to provide off-duty meal periods;

(3)      Whether Tesoro's policy of requiring workers to maintain constant communication throughout their shifts violates its duty to provide off-duty meal periods;

(4)      Whether Tesoro is required to pay waiting-time penalties for failing to pay former employees an hour of premium pay for each shift in which they did not get meal periods; and

(5)      Whether Tesoro's failure to include a mechanism to track and pay for missed meal breaks violates its obligations under state law.

Defendant counters that not all members of the purported class are subject to the same requirements to remain on the premises or in constant communication because individual job duties vary unit to unit and day to day.  Opp. at 22.  Moreover, reflecting this purported diversity within the refinery, Defendant argues that there is no common policy tying all class members together.

In *Burgess*, Judge Fairbank rejected these arguments and certified a similar class from the Los Angeles refinery operated by Tesoro.  *See Burgess*, Docket Nos. 82, 83.  Judge Fairbank found that common questions of law and fact supporting class certification included: (1) the scope of Tesoro's "obligations to provide meal breaks"; (2) "whether Tesoro has a policy requiring shift workers to remain on premises"; (3) "whether shift workers must remain in constant contact"; and (4) whether Tesoro has a policy restricting sleeping, reading, television, and other non-work activities.  *See Burgess*, Docket No. 82, at 5-6.

This case presents the same questions, and the Court agrees with the analysis in *Burgess*. Here, as in *Burgess*, Tesoro argues there are varying conditions that negate commonality.  However, that some workers can leave the premises with permission does not negate Plaintiffs' assertion that there is a general default policy against leaving the premises.  Nor has Tesoro presented evidence that such permission is granted frequently or that workers feel they are able to request permission with any regularity.  *See* Opp. at 10 (describing policy authorizing workers to leave with permission).  Indeed, the evidence is to the contrary.  *See* Rios Depo., Docket No. 171, Exh. 7, at 43 (operators are expected to be available throughout 12-hour shifts); Brunell Depo., Docket No. 110, Exh. 24, at 129 (Operators who are not in a training position cannot leave the refinery); Hanson

**United States District Court**
For the Northern District of California

1  Depo., Docket No. 110, Exh. 25 at 178 (Q. Are the shift workers allowed to leave the premises

2  during their shift?  A. No. We're paying them to be on site for that twelve[] hours.)[5]; *Burgess*,

3  Docket No. 82, at 5.  Tesoro's averment that there is no uniform policy with respect to sleeping,

4  reading, and other leisure activities is also belied by the evidence.  *See, e.g.*, Basic Rules of Conduct,

5  McCormack Decl., Docket No. 140, Exh. E, ¶¶ 8, 17, 24-25 (prohibiting sleeping, reading non-work

6  materials, and leaving the work space without permission); Opp. at 14 (admits to reading policy,

7  though it argues that it "is not uniformly followed or enforced").

8          Thus, there is at least a "core of salient facts" with respect to these questions.  *See Burgess*,

9  Docket No. 82, at 6; *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1101, 1019-20 (9th Cir. 1998)

10  (finding commonality where plaintiffs' claims "stem from the same source"); *Dilts v. Penske*

11  *Logistics, LLC*, 267 F.R.D. 625, 633 (S.D. Cal. 2010) ("Plaintiffs have identified common factual

12  questions, such as whether Defendants' policies deprived the putative class members of meal

13  periods, rest periods, overtime pay, and reimbursement for installation tool expenses, and common

14  legal questions, such as Defendants' obligations under California Labor Code §§ 201-03, 226, 226.7,

15  512, 1174, and 2802 and California's Unfair Competition law."); *Gardner*, slip op. at 11-12

16  ("Plaintiffs have demonstrated the existence of questions and issues common to the class" because

17  "the policies and practices at issue are applicable to all Operators.").

18          Defendant also contends that the class includes "dozens of different positions in dozens of

19  different units, all of which have unique work demands, rules and practices."  Opp. at 3.  Again the

20  Court is not persuaded this contention defeats commonality for several reasons.  First, Defendant's

21  objection different positions such as Shift Safety Inspectors and trainees as well as Operators not

22  assigned to work crew positions, among others has been mooted; most of these disputed positions

23  have now been removed from the class.  *See* Reply at 8-9 (agreeing that "Shift Safety Inspectors,

24  Operator Helper Trainees, and Zone Operator Relief personnel should not be included in the class"

25  but maintaining that "Operators working turnarounds" should remain).  Counsel clarified at oral

26  argument that Shift Safety Inspector Trainees are also to be excluded from the class.

27

28          [5]  Hanson is Tesoro's 30(b)(6) deponent for the Golden Eagle Refinery.  See Fang Decl.,
Docket No. 110,  34.

United States District Court

For the Northern District of California

Second, many of the purported differences Defendant touts between various work positions have to do with how busy they are on a daily basis or the level of responsibility different positions entail.  *See* Opp. at 3-4; King Decl., Docket No. 147,  8-9 (describing variation in incidence of alarms between different units); Bishop Decl., Docket No. 141 (describing varying amounts of downtime between job titles and on different days); McDonald Decl., Docket No. 149, ¶¶ 9-11 (same).  These variations do not bear on whether plaintiffs were relieved of duties for meals (regardless of what those duties entailed) – the issue at bar in this case).  *See* Garcia Depo., Docket No. at 139, Exh. H, at 147-150 (head shift operator and board shift operator can cover for each other for short periods of time);  Hanson Depo., Docket No. 110, Exh. 25, at 192 (relief not generally available for meals).  Moreover, differences as to whether plaintiffs had sufficient time to eat and whether there was a policy prohibiting meals altogether does not negate the broader question of whether employees are on-call during their the meal periods.  *See* Brunell Decl., Docket No. 142, ¶¶ 5, 10 (Operators "are paid to be ready to respond in an emergency"); Heinz Depo., Docket No. 171, Exh. 3, at 51 ("If you receive a radio call while you are eating, you stop and respond.").  *See also Gardner*, slip op. at 12 ("To the extent Defendants intended to defeat a finding of commonality by providing an extensive recitation of the various duties carried out by members of the proposed class, these distinctions are irrelevant because the policies and practices at issue are applicable to all Operators.").

Defendant attempts to argue that because it need only make meal breaks available, not enforce them, there are no common issues with respect to the class as any liability would turn on an individualized inquiry into why Plaintiffs failed to take meal periods.  *See Perez v. Safety-Kleen Systems, Inc.*, 253 F.R.D. 508, 515 (N.D. Cal. 2008) ("[W]hile employers cannot impede, discourage or prohibit employees from taking meal breaks, they need only make them available, not ensure they are taken.").  For reasons discussed in greater detail below, this argument fails.  Defendant's legal

///

///

///

///

United States District Court

For the Northern District of California

1    proposition is not only uncertain,[6] it is immaterial to the issue here – whether the meal breaks that

2    were made available were on-duty or off-duty breaks.

3           The Court notes that Defendant's vigorous defense of its policies under California law relate

4    to the *entire* facility; if anything this tends to confirm that resolution of the questions raised would

5    apply to the class as a whole.  *See, e.g.*, Keith Decl., Docket No. 146, ¶ 8 (Board Operators are not

6    required to stay at their boards); Tippitt Decl., Docket No. 147, ¶ 3 ("Operators *always* have more

7    than thirty uninterrupted minutes every five hours to eat meals . . . .") (emphasis added); *see also*

8    *Dukes*, 131 S. Ct. at 2551 ("What matters to class certification . . . is . . . the capacity of a classwide

9    proceeding to generate common answers apt to drive the resolution of the litigation.") (quotation

10   omitted).

11          Defendant's reliance on *Dukes* is inapposite.  In *Dukes*, the Supreme Court held that

12   "[d]issimilarities within the proposed class . . . have the potential to impede the generation of

13   common answers." 131 S. Ct. at 2551 (quotation omitted).  The instant case stands in contrast to the

14   putative class in Dukes.  Here, the purported class members all work at the same facility.  This is not

15   a case with nationwide class members spread over thousands of stores.  Moreover, *Dukes* involved

16   the allegation that the company's *lack* of centralized pay policy was unlawful.  *See* 131 S. Ct. at

17   2553 ("The whole point of permitting discretionary decisionmaking is to avoid evaluating

18   employees under a common standard.").  *Dukes* therefore posed the seemingly paradoxical question

19   of whether a policy of decentralization was itself a common, discriminatory policy subject to

20   classwide adjudication.  *Id.* at 2554.  The Supreme Court held that it was not because the plaintiffs

21   could not "identify[] the specific employment practice that is challenged." *Id.* at 2555.  Here, by

22   contrast, Plaintiffs allege a specific set of practices–the failure to relieve employees of all duty for

23   meal periods–that deprives plaintiffs of off-duty meals without compensating them for on-duty meal

24   periods.  Plaintiffs contend, and the evidence indicates, the challenged policy applies to all the

25

26

27          [6] This argument is itself uncertain, as the California Supreme Court is currently reviewing a
     case holding that employers need not enforce meal periods as long as they simply make them
28   available.  *See Brinker Restaurant Corp. v. Superior Court*, 80 Cal. Rptr. 3d 781 (Cal. App. 2008).

**United States District Court**
For the Northern District of California

1   members of the class throughout the facility with only exceptional variations.  Accordingly, the

2   Court finds that Plaintiffs have satisfied the commonality requirement.

3           c.    <u>Typicality</u>

4         Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical

5   of the claims or defenses of the class."  Courts assess typicality by determining "whether other

6   members have the same or similar injury, whether the action is based on conduct which is not unique

7   to the named plaintiffs, and whether other class members have been injured by the same course of

8   conduct."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

9         Here, because Plaintiffs' theory of liability involves a common policy denying all class

10  members meal periods, the named class representatives have necessarily suffered the same alleged

11  harm [denial of meal periods] in the same manner [requirement to remain on duty] as the larger

12  class.  In fact, Defendant does not dispute that the named Plaintiffs' claims are typical of the class as

13  a whole.  Accordingly, the Court finds that Plaintiffs have satisfied the typicality requirement.

14          d.    <u>Adequacy</u>

15        Rule 23(a)(4) requires that the class representatives "fairly and adequately protect the

16  interests of the class."  "This factor requires: (1) that the proposed representative Plaintiffs do not

17  have conflicts of interest with the proposed class, and (2) that Plaintiffs are represented by qualified

18  and competent counsel."  *Dukes*, 603 F.3d at 614.

19        Defendant argues that Plaintiffs do not have enough knowledge about the class as a whole to

20  adequately represent it because class representatives have only worked in eight of the thirty-four

21  units at Tesoro.  Opp. at 22.  However, that class representatives do not have personal knowledge of

22  the experiences of each of their fellow class members says nothing about the rule's chief concern,

23  which is to "uncover conflicts of interest between named parties and the class they seek to

24  represent."  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 594 (1997) (finding named class

25  inadequate where currently-injured plaintiffs would seek immediate payment and exposure-only

26  plaintiffs would seek a long-term compensation fund).  Indeed, Judge Fairbank rejected just such a

27  contention in *Burgess*, certifying a class with only one representative who necessarily lacked

28  knowledge as to other class members' practices. *See Burgess*, Docket No. 82, at 7.  As Judge

United States District Court

For the Northern District of California

1  Fairbank noted, a lack of knowledge of the entire class "does not show any conflict of interest." *Id.*;

2  *see also Heffelfinger v. Elec. Data Systems Corp.*, No. CV 07-00101, 2008 WL 8128621, at *16

3  (C.D. Cal. Jan. 7, 2008) ("[Defendant] misconstrues the standard governing adequacy of

4  representation. The fact that plaintiffs may not have firsthand knowledge of practices at EDS

5  facilities throughout the state does not suggest that they [are not adequate].").

6      The Court similarly rejects this argument.  Because the representatives were able to give

7  detailed depositions about their own experiences giving rise to the complaint, limited knowledge

8  they may have as to others does not vitiate their ability to fairly represent the class.  *Cf. Koenig v.*

9  *Benson*, 117 F.R.D. 330, 337 (E.D.N.Y 1987) (finding inadequacy where named plaintiff

10  demonstrated "an alarming unfamiliarity with the suit," including the fact that he "did not read his

11  complaint before it was filed, since he only reads, writes, and speaks Yiddish, not English, and had

12  his son Samuel explain the important parts to him"); *Kassover v. Computer Dep.*, 691 F. Supp. 1205,

13  1213 (D. Minn. 1987) (finding inadequacy where "plaintiff admitted at several points he possesses

14  'no facts' to support essential allegations in his complaint").

15      Regarding the second prong of the adequacy analysis, Defendant has raised no question

16  about the competence of class counsel.  Indeed, counsel has significant experience in class action

17  and wage and hour litigation.  *See* Fang Decl. ¶¶ 2-4; Smith Decl. ¶¶ 3-6; Rouco Decl. ¶¶ 2-8.

18  Accordingly, the Court finds that Plaintiffs have satisfied the adequacy requirement.

19      3.    Rule 23(b)

20      In addition to the threshold requirements of Rule 23(a), plaintiffs seeking class certification

21  must also satisfy one of the prongs of Rule 23(b).  Here, Plaintiffs primarily assert that the class is

22  certifiable under 23(b)(3), though they contend in the alternative that 23(b)(2) certification is also

23  appropriate.  *See* Mot. at 25.  Because the Court finds that certification under 23(b)(2) would be

24  inappropriate, *see Dukes*, 131 S. Ct. at 2558 ("[I]ndividualized monetary claims belong in Rule

25  23(b)(3)."), it considers only the requirements of 23(b)(3) below.

26      a.    Rule 23(b)(3)

27      "[T]he presence of commonality alone [under 23(a)(2)] is not sufficient to fulfill Rule

28  23(b)(3)." *Hanlon*, 150 F.3d at 1022.  Rather, "[t]o qualify for certification under [Rule 23(b)(3)], a

United States District Court

For the Northern District of California

class must satisfy two conditions in addition to the Rule 23(a) prerequisites: common questions must "predominate over any questions affecting only individual members," and class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

i.      Predominance

In evaluating whether common issues predominate, the operative question is whether a putative class is "sufficiently cohesive" to merit representative adjudication. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Though common issues need not be "dispositive of the litigation," *In re Lorazepam & Clorezepate Antitrust Litig.*, 202 F.R.D. 12, 29 (D.D.C. 2001), they must "present a significant aspect of the case [that] can be resolved for all members of the class in a single adjudication" so as to justify "handling the dispute on a representative rather than an individual basis." *Hanlon*, 150 F.3d at 1022. Courts must thus separate the issues subject to "generalized proof" from those subject to "individualized proof" to determine whether plaintiffs have satisfied the predominance requirement. *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486, 2006 WL 1530166, at *6 (N.D. Cal. June 5, 2006) ("Predominance requires that the common issues be both numerically and qualitatively substantial in relation to the issues peculiar to individual class members.") (internal quotation omitted).

Plaintiffs assert that common issues predominate because it is Defendant's general policies that establish its violations of California law. Mot. at 22-23. As discussed above with respect to commonality, Plaintiffs intend to present evidence of these generally applicable policies which, it contends, keep Plaintiffs on duty throughout their shifts without the ability to take off-duty meal breaks. *See, e.g.*, McCormack Decl., Docket No. 140, Exh. E, ¶¶ 8, 17, 24-25 (Basic Rules of Conduct prohibit sleeping, reading non-work materials, and leaving the work space without permission); Heinz Depo., Docket No. 171, Exh. 3, at 51 ("If you receive a radio call while you are eating, you stop and respond."); Bishop Depo., Docket No. 110, Exh. 27, at 40 (acknowledging the expectation that an operator answer a radio call)[7]; *id.* at 5, 39-40 (stating that gaugers and shift

---

[7] Bishop is Tesoro's 30(b)(6) representative for the Logistics Area of the Golden Eagle refinery. *See* Fang Decl., Docket No. 110, ¶ 36.

United States District Court

For the Northern District of California

1   dispatchers are expected to answer a call at any time); Brunell Depo, Docket No. 110, Exh. 24, at 72

2   ("We are all in contact at all times."); *id.* at 129 (Operators who are not in a training position cannot

3   leave the refinery); Hanson Depo., Docket 110, Exh. 25, at 178 (same); Rios Depo., Docket No. 171,

4   Exh. 7, at 43 (operators are expected to be available throughout 12-hour shifts); Gonzalez Depo.,

5   Docket No. 110, Exh. 26, at 55-56 (unaware of any 12-hour worker who was paid for a missed

6   meal).[8]

7        Defendant counters that Plaintiffs' allegations are susceptible to only individual adjudication

8   because there are substantial differences between and among the various positions covered in the

9   purported class. *See, e.g.*, Opp. at 3-4; King Decl., Docket No. 147,  8-9 (describing variation in

10  incidence of alarms between units); Bishop Decl., Docket No. 141 (describing varying

11  amounts of downtime between job titles and on different days); McDonald Decl., Docket No. 149,

12  9-11 (same); Johnson Depo., Docket No. 139, Exh. Q, at 67-68 (estimating that he gives an operator

13  in the chemical plant permission to leave the premises 3-4 times per week).

14       Despite Defendant's evidence of some day-to-day variations within the refinery, however,

15  Plaintiffs' common issues with respect to Tesoro's general policies predominate.  While there may

16  be some variation within the Golden Eagle refinery with respect to the amount of downtime per shift

17  or number of times per week that employees leave the premises, such variation does not "present

18  sufficient evidence that individual questions predominate over Plaintiffs' actual theory, which is

19  based on Tesoro's purported general policies . . . ."  *Burgess*, Docket No. 82, at 8 (citing *USW v.*

20  *ConocoPhillips Co.*, 593 F.3d 802, 808 (9th Cir. 2010)).  Some of the variations cited by Tesoro are

21  not material to the central issues in this case – *i.e.*, whether workers, regardless of the nature of their

22  jobs, are afforded an off-duty meal period.  Moreover, even if relief is occasionally available for

23  shift workers, as Tesoro contends, Tesoro does not explain how the policies and practices governing

24  such occasional relief would themselves not be subject to class-wide adjudication.  *See* Keith Depo.,

25  Docket No. 171, Exh. 6, at 103 (operators are typically relieved of their duties for work-related

26  functions like annual physical).

27  _____

28      [8] Ms. Gonzalez is Tesoro's 30(b)(6) representative regarding payroll matters. *See* Fang
Decl., Docket No. 110, ¶ 35.

United States District Court

For the Northern District of California

1    In any event, as noted above and described below, exceptions to the general rule appear rare.

2    *See* Hanson Depo., Docket No. 110, Exh. 25, at 192 (relief not generally available for meals);

3    Feldermann Depo., Docket No. 139, Exh. G, at 18-19 (left premises for lunch with permission of

4    supervisor estimated two times in five years).  Defendant points to Jerry Johnson as an example of a

5    supervisor who allows a great deal of variation with respect to meal periods  in his unit, the

6    Chemical Plant.  Yet Mr. Johnson's own testimony is somewhat contradictory with respect to the

7    frequency of these exceptions.  *Compare* Johnson Depo., Docket No. 139, Exh. Q, at 68 (stating that

8    he gives permission for an operator to leave to get lunch 3-4 times per week), *with id.* at 83

9    (indicating that earlier figure may include permission for things other than meal periods).  His

10   testimony is also disputed by his workers.  *See, e.g.*, Feldermann Depo., Docket No. 171, Exh. 18, at

11   9-10 (stating that he has never spent more than 15 minutes eating and that Mr. Johnson told him,

12   "You don't get no fucking lunch."); A. Garcia Decl., Docket No. 110, Exh 54, ¶ 16 ("I have never

13   been relieved of my work duties in order to take a meal break.").  Mr. Johnson's testimony is

14   insufficient to demonstrate that individual issues predominate even for the Chemical Plant, let alone

15   for the class as a whole.  Even by his estimates, he grants permission for one person to leave the

16   refinery 3-4 times per week.  That would still leave the dominant, common scenario:  Tesoro's

17   default policy forbidding the practice and most people are unable to leave most of the time.

18        Defendant also points to the availability of relief workers during meal breaks.  Specifically, it

19   points to its Central Control Room Meal/Break Practice, which indicates that operators may cover

20   each other's boards.  *See* Opp. at 15 ("It is also expected for process units that someone will watch

21   your board during the period you are away from the console.") (quoting CCR Meal/Break Practice,

22   Docket No. 110, Exh. 20).  However, Defendant selectively quotes from the Practice.  The two

23   sentences before its quote state, "Since Operators do not have a paid lunch period, you eat as

24   conditions allow.  It is the expectation that time away from the control board will be minimized."

25   Additionally, some of the declarations Defendant cites as examples of the relief available for

26   workers do not support its position.  For example, Defendant cites to Mr. Garcia's deposition for the

27   proposition that the "head shift operator and board shift operator cover for each other during meals."

28   Opp. at 16 (citing A. Garcia Depo., Docket No. 139, Exh. H, at 147-150).  However, Mr. Garcia is

United States District Court

For the Northern District of California

1    clear in this portion of the deposition that while he could "cover for [a co-worker] if he went to the

2    kitchen for two minutes," A. Garcia Depo. at 149, he "will not want [his] board man away from the

3    board for 30 minutes because he is not really allowed to," *id.* at 150.  *See also* Higgins Depo.,

4    Docket No. 139, Exh. O, at 43-44 (operators can cover each other for *restroom breaks*); Brunell

5    Depo., Docket No. 139, Exh. B, at 164 (explaining that operators can cover for each other, but not

6    discussing whether they covered each other for meals).[9]  Some of Defendant's record citations are

7    thus unhelpful at best and misleading at worst.

8            At bottom, Defendant would read the predominance requirement to constitute a uniformity

9    requirement, such that a single exception would defeat class certification.  Such a standard does not

10   exist in the case law or the federal rules.  *See Hanlon*, 150 F.3d at 1022-23 (finding predominance

11   where there was "[a] common nucleus of facts and potential legal remedies," even though class

12   members may have had different remedies according to different state consumer protection laws).

13   In *Dilts v. Penske Logistics*, for example, the Court held that common questions predominated even

14   though certain class members' circumstances varied and some of the defendant's practices would

15   have to be proven by anecdotal testimony.  267 F.R.D. 625, 636-38 (S.D. Cal. 2010).  *Dilts* certified

16   the class under (b)(3).

17           Defendant next argues that even if its policies apply classwide, its meal break policies are

18   sufficient as a matter of law, thus rendering any liability inquiry dependant on individual deviations

19   from its policies.  *See* Opp. at 29-34.  As mentioned above, Defendant claims the *availability* of

20   meal periods, not their enforcement, is what determines their legality.  Opp. at 23-24.  Thus, it

21   contends individual issues predominate because plaintiffs must present evidence as to how often

22   their meal periods were actually interrupted with phone calls or other situations requiring a response,

23   and whether Defendant is responsible for any meal periods an employee failed to take.  *See* Opp. at

24   32; *Cf. Mateo v. V.F. Corp.*, 2009 U.S. Dist. Lexis 105921, at *18-19 n.2 (N.D. Cal. Oct. 27, 2009)

25   (finding individual issues predominated where plaintiffs claimed an unwritten practice precluded

26   _____

27           [9]  In other portions of Mr. Brunell's deposition not cited by Defendant, he states that officers
     cover each other for work-related purposes or emergencies.  *See* Brunell Depo., Docket No. 110,

28   Exh. 24, at 135 ("[E]ssentially they're not allow to leave for any convenience. It's usually job
     related or urgent.").

1    them from taking meal breaks); *Salazar v. Avis Budget Group, Inc.*, 251 F.R.D. 529, 532-33 (S.D.

2    Cal. 2008) (same).

3          However, as noted above, Defendant's argument that it need only make meal periods

4    available in order to satisfy the law does not answer Plaintiffs' central allegations; it merely begs the

5    question whether those meal periods that were made available complied with applicable law

6    regarding off-duty meal breaks.  For example, Defendant emphasizes Plaintiffs' acknowledgments

7    that they have been able to eat during their employment at the refinery.  *See, e.g.*, Gutierrez Depo.,

8    Docket No. 139, Exh. L, at 67-68; Brunell Decl., Docket No. 142, ¶ 5 (Operators "regularly have

9    much more than 30-minutes of uninterrupted time every five hours during their shifts to eat their

10   meals").  However, that an employee had time to eat during his or her shift does not establish that

11   such a meal satisfied the California requirements for off-duty meal periods.  *See* IWC Wage Order 1-

12   2001 § 11(C) ("Unless the employee is relieved of all duty during a 30 minute meal period, the meal

13   period shall be considered an "on duty" meal period and counted as time worked.").

14         Indeed, Judge Klausner rejected the same argument in *USW*, finding that it is the employer's

15   requirement that workers be available for potential interruptions, rather than the frequency of the

16   interruptions themselves, that establishes the violation.  *USW*, Aug. 27, 2010 slip op. at 7 ("The

17   mere ongoing requirement to remain on the premises [and] ready to respond to calls is a duty in and

18   of itself sufficient to show that plaintiffs were not relieved of all duty."); *see also Burgess*, Docket

19   No. 82, at 7-8 ("Plaintiffs contend that the duties in this case are not restricted to Plaintiffs' actual

20   responses to calls and alarms, but instead that the mere ongoing requirement to remain on premises

21   [and] ready to respond to calls constitutes a duty in and of itself.").

22         Similarly, Judge Wilken concluded that such an argument mischaracterized the scope of

23   protection offered under California law.  *Gardner*, slip op. at 17.  As she summarized,

24              California Labor Code § 512 generally requires employers to provide
                employees with meal periods of at least thirty minutes at intervals
25              depending on the number of hours worked in a given day.  Cal. Labor
                Code § 512(a). In turn, California Labor Code § 226.7 states that no
26              employer shall require any employee to work during any meal period
                established by an applicable IWC Wage Order. Under IWC Wage
27              Order 1-2001 § 11(C), "[u]nless the employee is relieved of all duty
                during a 30 minute meal period, the meal period shall be considered an
28              'on duty' meal period and counted as time worked." An "on duty"

United States District Court

For the Northern District of California

meal period is permitted when the "nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to." IWC Wage Order 1-2001 § 11(C). Section 226.7 also mandates one additional hour of pay at the employee's regular rate of compensation for each work day that a meal period is not provided in accordance with an applicable IWC Wage Order. Cal. Labor Code § 226.7(b).

*Id.* Courts have interpreted these provisions to mandate that employers "ensure that [their] employees are free from [their] control for thirty minutes." *Id.* at 18 (quoting *Brown v. Federal Express Corp.*, 249 F.R.D. 580, 585 (C.D. Cal. 2008) (applying *Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal. 4th 1094, 1104 (2007)).

As in *Gardner* and *Burgess*, here Plaintiffs' allegations are that Defendant's policies and practices deprive employees of off-duty meal periods. "Essentially, Plaintiffs claim that Defendants have not relinquished sufficient control over [class members] during their meal breaks so as to make available an off-duty meal break and, thus, the [class members] are entitled to payment of an hour's premium wage for each on-duty meal break." *Gardner*, slip op. at 18. Even under the more lenient "available" standard advocated by Defendant, there is still a classwide dispute over whether Plaintiffs' meal periods were "off-duty" given the restrictions on their activities during shifts. This dispute "can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022. That Defendant disputes Plaintiffs' interpretation of its legal duties to the class does not make the resolution of such a dispute "individualized"; quite the opposite.

Furthermore, the fact that Defendant may prevail on its legal theory at a future date does not justify denying class certification. The California Supreme Court is currently considering the scope of employers' affirmative duties to ensure that workers take their meal breaks. In *Brinker Restaurant Corp. v. Superior Court*, 80 Cal. Rptr. 3d 781 (Cal. App. 2008), the California Court of Appeal held that employers need not ensure their employees take meal periods as long as they make them available. *Id.* at 786 (denying class certification because individual issues predominate as to whether the defendant actively prevented certain workers from taking meal and rest periods). Because the California Supreme Court is currently reviewing *Brinker*, *see* 85 Cal. Rptr. 3d 688, 196

**United States District Court**
For the Northern District of California

1  P.3d 216 (2008), *Brinker* is not citable authority under the California Rules of the Court.  Cal. Rules

2  of Court 8.1105(e).

3        In this regard, Defendant invites this Court to commit the same error committed by the

4  district court in *USW v. ConocoPhillips*, where the district court had found, "if Plaintiffs' 'on-duty'

5  theory of liability fails, then common questions will no longer predominate over individual ones."

6  No. 08-2068, Docket No. 213, at 6 (C.D. Cal. June 11, 2009).  Judge Gutierrez denied class

7  certification on this basis, finding that the potential failure of Plaintiffs' on-duty theory was an

8  "insurmountable barrier to class certification" under Rule 23(b)(3) because it could render the case

9  unmanageable and subject only to individualized determinations at a later date.  *Id.* at 7.  However,

10  the Ninth Circuit reversed the denial of certification, holding that "the district court abused its

11  discretion by declining certification based on the possibility that plaintiffs would not prevail on the

12  merits on their "on duty" theory."  *USW v. ConocoPhillips Co.*, 593 F.3d 802, 808 (9th Cir. 2010).

13  The Court held that a district court's task in evaluating predominance was to look at the actual

14  theory presented by the plaintiffs and whether it presented common questions of law or fact.  *Id.*

15  "By refusing to analyze plaintiffs' 'on duty' argument as the basis for its predominance inquiry

16  because there c[ould] be no assurances that they w[ould] prevail on this theory, the district court

17  ignored Ninth Circuit precedent and ultimately abused its discretion."  *Id.* (internal quotation

18  omitted).  As the Ninth Circuit held in *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975),

19  "[N]either the possibility that a plaintiff will be unable to prove his allegations, nor the possibility

20  that the later course of the suit might unforeseeably prove the original decision to certify the class

21  wrong, is a basis for declining to certify a class which apparently satisfies [Rule 23]."

22        Other cases on which Defendant relies are also distinguishable.  In *Cruz v. Dollar Tree*

23  *Stores, Inc.*, Nos. 07-2050, 07-4012, 2011 U.S. Dist. Lexis 73938 (N.D. Cal. 2011), for example,

24  Judge Conti decertified a class of current and former Dollar Tree managers who alleged overtime

25  and meal and rest period violations as a result of Dollar Tree misclassifying them as exempt

26  employees.  *Id.* at *3.  Concerned about the "propriety of continued class treatment" in the wake of

27  *Marlo v. UPS*, 639 F.3d 942 (9th Cir. 2011), and *Wal-Mart v. Dukes*, 131 S. Ct. 2541 (2011), the

28  court held that individual issues predominated because the basis of the plaintiffs' class-wide

1   proof-payroll certification forms-were no longer sufficient as both parties had attacked their

2   reliability.  *Cruz*, 2011 U.S. Dist. Lexis 73938 at *11-12.  Further, it found that representative

3   testimony from class members was no longer a tenable way to prove misclassification and

4   non-exempt status after *Marlo* and *Dukes*. *Id.* at *12.  Thus, Plaintiffs no longer had a class-wide

5   method of demonstrating that "misclassification was the rule rather than the exception." *Id.* at *14

6   (quoting *Marlo*, 639 F.3d at 947).  However, the requirements for analyzing an employee's

7   exemption status in *Cruz* are far more individually focused than those at issue in this case.

8   Specifically, plaintiffs in a misclassification case must demonstrate that they perform less than 51%

9   of their time to managerial tasks. *Id.*  In addition, the court learned that many class members had

10  lied about their time at the company, and had been misleading about their payroll certifications. *Id.*

11  at *20.  By contrast, in this case Plaintiffs rely in large part on Defendant's own written policies as

12  well as the company's own supervisors and 30(b)(6) deponents' testimony to make their class-wide

13  claim.  Nor is there any indication that the identical testimony evidencing common practices are

14  untruthful or unreliable.

15          *Mateo v. V.F. Corp.*, 2009 U.S. Dist. Lexis 105921, at *18-19 n.2 (N.D. Cal. Oct. 27, 2009),

16  is similarly unavailing.  In *Mateo*, the court found that individual issues predominated in part

17  because plaintiffs claimed an unwritten practice precluded them from taking meal breaks.  By

18  contrast, here Plaintiffs largely point to written policies that purport to apply to the class as a whole;

19  it is defendants who allege unwritten exceptions that may detract from those policies.  Likewise, in

20  *Blackwell v. Skywest Airlines*, 245 F.R.D. 453 (S.D. Cal. 2007), the court denied class certification

21  to airline employees asserting meal period violations.  The court's chief justification for denying

22  certification was that the employees were subject to different policies.  In addition, the plaintiffs'

23  chief allegations were that they received insufficient meal breaks, not that their breaks were on-duty.

24  Blackwell thus dealt with a more individualized problem of calculating the amount of time missed.

25  *Id.* at 467; *see also Burgess*, Docket No. 82, at 9 (distinguishing *Blackwell* on additional grounds

26  because it "involved unrestricted downtime between airline flights" as opposed to "the more

27  controlled 'downtime' at issue here").

28

**United States District Court**
For the Northern District of California

1    In sum, based on the information currently before the Court, common issues appear to

2  predominate.  As in *Burgess* and *Gardner*, here Plaintiffs have presented sufficient evidence of

3  common policies and common legal disputes with respect to the legality of those policies.  Any

4  variations presented by Defendant are either immaterial to the "on-duty" meal break claim or

5  otherwise insufficient to predominate over those common disputes.

6                          ii.    <u>Superiority</u>

7    Rule 23(b)(3) requires that a class action be "superior to other methods for the fair and

8  efficient adjudication of the controversy."  The court considers the following "non-exclusive"

9  factors, *Hanlon*, 150 F.3d at 1023, in evaluating superiority:

10              (A) the class members' interests in individually controlling the
                prosecution or defense of separate actions;
11              (B) the extent and nature of any litigation concerning the controversy
                already begun by or against class members;
12              (C) the desirability or undesirability of concentrating the litigation of
                the claims in the particular forum; and
13              (D) the likely difficulties in managing a class action.

14  *Id.*  Plaintiffs argue that class action treatment is superior because class members have no individual

15  interest in controlling the litigation, particularly when the USW is funding the action.    In addition,

16  they claim, any individual claims would rely on largely the same evidence of Tesoro's policies; class

17  treatment thus promotes efficiency and the preservation of judicial resources.  Mot. at 24.

18  Moreover, concentration in this forum is appropriate because the parties and evidence are here.

19  Mot. at 25.

20    Plaintiffs' contentions point to the difficulty and relative inefficiency of pursuing these

21  claims through any other method.  Because each individual plaintiff's recovery is likely to be small

22  as compared to the costs of litigating, most plaintiffs would be unlikely to pursue their claims

23  through individual actions.  *See Hanlon*, 150 F.3d at 1023 (finding superiority where "litigation

24  costs would dwarf potential recovery" in individual cases); *Zinser v. Accufix Research Institute, Inc.*,

25  253 F.3d 1180, 1189 (9th Cir. 2001) ("Where damages suffered by each putative class member are

26  not large, this factor weighs in favor of certifying a class action.").  Moreover, given the classwide

27  nature of the claims and the predominance of common issues over individual issues, it would make

28  little sense to force the parties and the courts to duplicate efforts all with respect to the same

United States District Court

For the Northern District of California

1   workplace.  *Cf. Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 653 (N.D. Cal. 1996) (finding no benefit

2   to class action where witnesses and evidence are spread across the country).

3          Defendant's argument against superiority relies solely on the manageability factor.

4   Defendant claims that individualized issues with respect to both liability and damages will render a

5   trial unmanageable.  Opp. at 34.  Defendant's liability-based argument–that the Court will need to

6   examine the particulars of when and why meal periods were missed with respect to each

7   employee–is unpersuasive for the reasons stated above.  *Cf. Zinser*, 253 F.3d at 1192 (finding

8   manageability problems where "each class member has to litigate numerous and substantial separate

9   issues to establish his or her right to recover individually").

10         Defendant does raise valid concerns with respect to damages calculations, pointing out that

11  its HR tracking system has certain glitches that would be difficult to sort out with respect to

12  calculating each employee's damages.  Gonzalez Decl., Docket No. 145, ¶ 3.  For example, certain

13  shifts would be subject to different rates of pay, and some shifts would need to be individually

14  removed from the calculus because of their exclusion from the class.  *Id.* ¶¶ 4-5.  However, while

15  Defendant points to the possibility that certain damages issues will be difficult to calculate, on the

16  whole it does not demonstrate that consolidating hundreds of individual actions or requiring

17  plaintiffs to intervene would save the parties or the Court time or money, or ensure a fairer process

18  for the parties.  Moreover, "[t]he amount of damages is invariably an individual question and does

19  not defeat class action treatment." *Mateo v. V.F. Corp.*, 2009 U.S. Dist. Lexis 105921, at *17 (N.D.

20  Cal. Oct. 27, 2009) (quoting *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)).  Thus, while

21  Defendant correctly flags some future challenges in the litigation, they are not substantial enough to

22  overwhelm the benefits of classwide resolution.

23         Accordingly, the Court hereby GRANTS Plaintiffs' motion and certifies the class and

24  subclass as defined above in Section III.A under Rule 23(b)(3).

25  B.     Evidentiary Objections

26         Defendant has filed a number of evidentiary objections, which the Court addresses in turn:

27         (1)    Defendant objects to Exhibits 2-23 of the Fang declaration under Fed. R. Evid. 602,

28         802, and 901.  Opp. at 35.  The Court overrules these objections.  Defendant argues that she

United States District Court

For the Northern District of California

does not have personal knowledge of the exhibits and cannot authenticate them.  These objections do not appear to have merit as they are either legal filings (Exhibits 2-5 are filings in this and other class actions, such as USW and Tesoro), legal documents to which Fang's clients are parties (Exhibits 6-9 are collective bargaining agreements between USW and Tesoro at the refinery), or documents produced by Tesoro in the course of this action (Exhibits 10-23 are manuals and other Tesoro policy documents produced by Tesoro in discovery).

(2)      Defendant objects to the declarations filed by Jeffrey Clark and Robert Forrest. Defendant argues that Plaintiffs failed to disclose these declarations as required by Rule 26(a)(1)(A)(i) and (e)(1)(a).  Docket No. 180, at 1.  However, Defendant does not make any argument as to why the supplemental disclosure was not "in a timely manner," Fed. R. Civ. P. 26(e)(1)(A), other than the fact that exhibits to those declarations were filed one business day before the reply was filed.  Defendant cites no substantial prejudice to its ability to respond.

(3)      Defendant challenges Jeffrey Clark's exhibits.  Jeffrey Clark is the Secretary-Treasurer of the USW Local 5.  Clark Decl.  1.  He presents evidence of disciplinary actions against operators at the refinery.  Defendant argues that exhibits 1-3 of the Clark Declaration are not relevant because they reflect disciplinary actions that took place at least a month before the class period begins.  Docket No. 180, at 1.  It also objects that they were untimely disclosed only one business day before Plaintiffs filed their reply. Defendant objects to exhibits 4-5 on the same untimely disclosure grounds. With respect to relevance, the Court overrules the objections; practices and policies close in time to the class period has some probative value.  Defendant cites no substantial prejudice.

(4)      Defendant lodges over twenty objections to class member declarations, arguing that they contain impermissible opinion testimony about which employees do not have personal knowledge.  The Court overrules these objections.  The challenged evidence largely consists of operators' statements about what certain operators are permitted to do or what is expected at the refinery.  These appear to be largely meritless, as the declarants provide background

United States District Court

For the Northern District of California

1    for their personal knowledge of the facts to which they testify.  *See, e.g.*, Objection 4 (Irwin

2    is a Head Shift Operator, likely to have personal knowledge of operators' requirements).

3    (5)    Defendant also objects to Plaintiffs' use of certain employees' deposition testimony,

4    which it argues is filled with impermissible opinion testimony in the form of legal

5    conclusions.  Fed. R Evid. 701.  The Court overrules these objections, as the questions

6    referenced in these depositions merely establish each witness's operating definition of the

7    vocabulary used in the deposition.  For example, Brunell's testimony that "so long as

8    somebody can eat a sandwich . . . that would be a meal period," Objection 27, is important to

9    establish a reference point to the rest of his testimony, so that one can understand what he

10   means when he refers to a "meal period."  The Court also overrules Defendant's Objection

11   No. 31 for leading.

12   C.    <u>Requests for Judicial Notice</u>

13   Plaintiffs request that the Court grant judicial notice of the following documents: Judge

14   Klausner's Order granting summary judgment and Order entering judgment in the *USW* action;

15   Judge Fairbank's Order granting class certification in Burgess; an amicus brief filed with the

16   California Supreme Court in *Brinker*; and Judge Wilken's Order applying equitable tolling in

17   *Gardner*.  *See* Docket No. 116.  In addition, in conjunction with their Reply, Plaintiffs request

18   judicial notice of Judge Wilken's Order granting class certification in *Gardner*; the Ninth Circuit's

19   Order denying Tesoro's petition for appeal in *Burgess*; and the declaration of Miles Locker filed in

20   *Gardner*.  See Docket No. 170.

21   Defendant requests that the Court grant judicial notice of the following documents: the *USW*

22   complaint; Judge Klausner's denial of class certification, remand order, and Tesoro's notice of

23   removal in *USW*; an Order of the Labor Commissioner in *Glaster v. Equilon*; Judge Gutierrez's

24   Order denying class certification in *ConocoPhillips*; and Tesoro's petition for appeal in *Burgess*. *See*

25   Docket No. 138.

26   As to all requests other than the Locker declaration, the Court grants the parties' requests and

27   takes judicial notice of those documents.

28

**United States District Court**
For the Northern District of California

1    Defendant objects to Plaintiffs' request for judicial notice of the Locker declaration in the

2   *Gardner* action.  Locker is a former attorney for the Department of Labor Standards and

3   Enforcement ("DLSE").  His declaration provided the *Gardner* court with information as to the

4   DLSE's interpretation of California labor law.  Defendant argues that this document does not fall

5   within the permissible scope of judicial notice.  *See Wyatt v. Terhune*, 315 F.3d 1108, 1114 (9th Cir.

6   2003) ("Factual findings in one case ordinarily are not admissible for their truth in another case

7   through judicial notice."); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001)

8   (finding error where district court took judicial notice of a waiver of extradition form and transcript

9   of extradition proceeding because while court may "take judicial notice of undisputed matters of

10  public record," it may not take  "judicial notice of disputed facts stated in public records").  The

11  Court agrees and sustains Defendant's objection.  The facts asserted in the declaration are

12  testimonial in nature and not subject to judicial notice.

13    This order disposes of Docket Nos. 109, 113, 138, 180.

14

15    IT IS SO ORDERED.

16

17  Dated:  September 8, 2011

18                                                    _____
                                                    EDWARD M. CHEN
19                                                  United States District Judge

20

21

22

23

24

25

26

27

28